### KREGER v. BALTIMORE & O. R. CO.

Circuit Court of Appeals, Third Circuit.
March 28, 1928.

No. 3640.

1. **Master and servant ⬥119—Railroad's failure to furnish particular switch held not negligence as to death of employee resulting from failure to use switch furnished.**

Where proximate cause of death of railroad electrical signal maintainer was not inadequacy of particular type of switch used by railroad, but employee's failure to use switch furnished, failure of railroad to furnish a particular switch for his use did not constitute negligence.

2. **Master and servant ⬥129(1)—Railroad's failure to provide employee with proper apparatus for testing electric wires held not negligence when not proximate cause of death.**

Where death of railroad electrical signal maintainer did not result from failure of railroad to furnish him proper apparatus and proper methods for testing wires, but rather from his own neglect or ignorance of character of installation, failure of railroad to provide particular apparatus and methods for testing wires did not constitute negligence.

In Error to the District Court of the United States for the Western District of Pennsylvania; Frederic P. Schoonmaker, Judge.

Action by Frances E. Kreger, as administratrix of the goods, chattels, and credits of Samuel B. Kreger, deceased, against the Baltimore & Ohio Railroad Company. Judgment for defendant (25 F.[2d] 726), and plaintiff brings error. Affirmed.

Ralph W. Botham and Charles A. Ludlow, both of New York City, for plaintiff in error.

Allen T. C. Gordon, Smith, Buchanan, Scott & Gordon, and William H. Eckert, all of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON and DAVIS, Circuit Judges, and KIRKPATRICK, District Judge.

KIRKPATRICK, District Judge. This action is brought by the plaintiff to recover damages for the death of Samuel B. Kreger, her husband, who was an electrical signal maintainer in the employ of the defendant railroad company, and who met his death by electrocution while performing the duties of his employment. He was an experienced employee, having been in the electrical signal service of the defendant for approximately seven years, during which time he had been helper, apprentice, assistant signal maintainer, and finally signal maintainer. He had been in charge of the defendant's electrical apparatus at the point where he was killed for a period of almost three years before the accident, and it may be assumed that he was thoroughly familiar with it.

The accident which resulted in Kreger's death happened at a small electrical substation of the defendant at Rockwood, Pa. A piece of mechanism in the defendant's main transmission line at that point, known as an oil switch, was out of order, and other portions of the installation had been working badly. Kreger had climbed a pole upon which the oil switch was placed, and was about to begin repairing it when he came in contact with the wires of the main transmission line and received the shock which killed him.

To account for the way in which he met his death, it is necessary to briefly describe the electrical installation at the Rockwood substation. The main transmission line here runs east and west, and ordinarily carries a current of 2,200 or 2,300 volts. To the east

of the point where Kreger was killed a circuit, which feeds the machine operating the switches and signals, taps the main line. Near the point where this circuit leaves the main line, there is a transformer through which the current in the circuit passes, and which steps it down to 110 volts. It then passes through the electrical parts of the defendant's signal system and then comes to another transformer and returns through it to the main line, connecting at a point a few feet to the east of where Kreger was killed. The current passing through this second transformer will be stepped up again or restored to its original strength of 2,300 volts, and of course will electrify the wires of the main line with which it connects with a current of that voltage. When Kreger arrived at the substation, this circuit was broken by open disconnects of some kind located at a relay box on the low voltage side of the first transformer.

Before Kreger and his assistant who accompanied him began work, they opened a switch to the west of the station and thus cut off the power from that direction. They then opened another switch to the east of the place where the repairs were to be made, between the point where the circuit referred to tapped the main line and the point where it returned to it. When this was done, no current could reach the defective oil switch along the main line on either side as long as the circuit through the signal system remained broken. Kreger, however, in order to keep the interlocking signal system in operation, closed that circuit by putting on what were known as terminal straps at the relay boxes near the first transformer. As has been explained, as soon as this was done, the current passing through the signal system at 110 volts was stepped up to 2,300 volts at the second transformer, and, returning to the main line near the place where Kreger went to work, set the main line alive with a high voltage. In other words, Kreger, after having cut off the direct route of the current along the main line to the place where he was working along the main line, opened to it another and more circuitous route through the signal system and the transformers.

It is almost certain that he failed to reckon with the fact that the second transformer operated in a manner the reverse of the first, and would convert a harmless current of 110 volts into a deadly one, and that this oversight was the cause of his death. What makes it more likely that he was un-

aware of the danger was the additional circumstance that the circuit, returning from the second transformer, connected with only the two lower of the three wires constituting the main transmission line, so that the upper wire could at all times be tested and handled in safety. However this may be, it is unnecessary to discuss the question of whether or not Kreger was contributorily negligent. This action is based on the negligence of the defendant, and it is not sufficient for the plaintiff to show the happening of an accident, even though it appear that the deceased was free from fault. The learned trial judge gave binding instructions for the defendant upon the ground that the plaintiff had failed to show any negligence on the part of the defendant as the proximate cause of the accident, and in so holding he was correct.

The negligence charged, and which the plaintiff contends is established by the evidence, is the failure of the defendant to provide its system with air break disconnects (1) on both sides of the transformers, and (2) upon both sides of the oil switches. Especially, the plaintiff says, the defendant should have had air break disconnects on the high voltage side of the second transformer between it and the place where the wires from it rejoin the main line.

The evidence shows, however, that at this point there were devices known as fuse cutouts, and it further appears by the testimony of the plaintiff's witnesses that under the conditions existing at the substation the fuse cut-outs would "satisfactorily disconnect" the transformer from the transmission line. There was some testimony, it is true, that it was not good electrical practice to use fuse cutouts rather than air break disconnects for this purpose, but it is clear the witnesses who testified to this had in mind possible dangers in opening and closing the fuse cutouts, and there was no suggestion that they were not an entirely effective means of breaking the circuit. If Kreger, while opening these cut-outs, had been injured by the flash, or by receiving a shock, the case would have been entirely different, but it is clear in the present case that, if there was any negligence in using the fuse cut-outs instead of the air break switches, such negligence was not the proximate cause of the death.

With regard to the alleged failure to install air break disconnects on both sides of the oil switch to be repaired, it need only be said that there were other oil switches on both sides and within easy distance. To the west was the one which Kreger opened, and to the

east were two, one of which was placed beyond the point where the signal circuit leaves the main line.

[1] It will thus be seen that, using the devices actually installed by the defendant, Kreger could have avoided the accident and could have worked with perfect safety in any one of three different ways. He could have opened the farther of the two switches in the main line to the east of the point where he was working; he could, by not putting on the terminal straps, have permitted the signal circuit to remain broken; or he could have opened the fuse cut-outs located on the near side of the second transformer, and thus cut the circuit off from the main line and prevented the main line wires from becoming alive with the high voltage current. The first two of these would have left the signal circuit cut off from all current from the main line, but it appears that the signal apparatus could have been operated without such current by its own storage battery. Any one of the three would have permitted him to work without any danger. The proximate cause of the accident was not the inadequacy of the particular type of disconnect used by the defendant, but it was Kreger's failure to use it.

[2] The plaintiff also contends that the defendant was negligent in two other particulars, which may be very briefly dismissed. They are, first, failure to furnish deceased with a voltmeter that would detect the current on the high-tension line; and, second, having taught him to test wires for current with the back of his hand. Both of these allegations may be considered · as a general charge that the defendant failed to provide Kreger with proper apparatus and proper methods for testing wires, and the same consideration applies to both. Assuming that the test with the back of the hand was an improper one, and assuming that the voltmeter with which Kreger had been supplied would not have been effective on the high-tension line, it is still a fact that Kreger, when he tested the line with his hand, tried the top wire only. This wire was dead at all times, and did not have anything to do with his death. As will be remembered, the circuit returning from the second transformer connected with the two bottom wires only of the main line. The evident fact is that Kreger had forgotten or was ignorant of the character of the installation by which the current returning from the circuit energized the two lower wires of the main line. Any number of tests applied to the dead wire would not have helped him in the least. If there was negligence in the matter of providing proper

tests or testing apparatus, it was not the cause of Kreger's death.

In addition to the foregoing, it appears by uncontradicted testimony that Kreger had been given instructions both by printed circular and by word of mouth that it was highly dangerous to attempt to work on the line without "sectionalizing"; that is to say, cutting of the portion of the line on which the work was to be done by opening oil switches on both sides and also placing grounded chains on both sides. These instructions were not followed.

In view of what has been said, it is unnecessary to pass upon the questions of contributory negligence and assumption of risk raised by the defendant. It is also unnecessary to discuss plaintiff's contentions arising out of the method of selection of the jury and certain rulings of the court upon matters of evidence. There was no evidence that the accident was caused by any negligence on the part of the defendant, and the direction of a verdict for the defendant upon that ground was correct.

The judgment is affirmed.